D. H. and J. S. BARLOW, Ex'rs, &c., *v.* BENJAMIN NORFLEET, Adm'r., &c.

A proposed witness, whose interest in the event of the suit is such as substantially makes him a plaintiff, is incompetent to testify as to a conversation between a testator, from whom he derives his interest, and the intestate of the defendants.

A Probate Judge who is personally interested in the commissions to be allowed to executors, is excluded from jurisdiction in such cases. And there can be no waiver of the disqualification, unless by parties having an opposing interest in some action, in which the allowance of commissions arises before him.

Where an administration is closed, the commissions due the executors are owing; and if the amount thereof be ascertained before an action is brought, such commissions may be pleaded as a counter claim.

A Judge has no right to leave it to the jury to give the plaintiff interest or not, as they should think proper. He should have instructed them, that if they found that the defendant owed the principal money demanded, the plaintiff was entitled to interest from the time it was due.

(*Hallyburton* v. *Dobson*, 65 N. C. Rep. 88, cited and approved.)

CIVIL ACTION to recover the value of a slave, named Barbara, tried before *Moore, J.*, at the July Term, 1874, of the Superior Court of EDGECOMBE county.

The following are the material facts presented by the record :

The slave, Barbara, was sold in September, 1862, by David Barlow, the plaintiffs testator, to one William Norfleet, the intestate of the defendant. Barbara had been bequeathed to

said Barlow, the testator, by H. S. Lloyd, in trust for the use and benefit of Joseph W. Lloyd during his life, with remainder to his children, in case he should leave any surviving, and if not, then to the said H. S. Lloyd's sister and other brother.

Joseph W. Lloyd was offered as a witness by the plaintiffs, to prove the terms of the sale, as agreed by the testator of the plaintiffs and the defendant's intestate. He stated that he and Barlow, the said testator, went together to the house of Wm. Norfleet, the intestate of defendant, in September, 1862; that the understanding between him (the witness) and Barlow was, that he, Lloyd, should convey to Barlow another slave, to be substituted in the trust fund for Barbara, in case he, Barlow, should sell the latter to Norfleet; and that he went with Barlow to Norfleet's to carry out his part of this arrangement.

The defendant's counsel objected to so much of the testimony, as related to any conversation between said Barlow and Norfleet, on the ground that the witness had an interest, which might be affected by the result of this action, and that he was substantially a party to the transaction. The objection was sustained by the Court, and plaintiffs excepted.

This witness further stated, that the intestate of defendant took into his possession Barbara and that she remained with him until her emancipation in 1865; that she was a very likely girl, and in his opinion, worth $1000 in good money. John Norfleet, one of the defendant's witnesses, testified that Barbara, in September, 1862, was worth about $300 or $400 in gold.

As to the counter claim insisted on by the defendant's answer, it was in evidence, that the legatees of H. S. Lloyd, in their petition to the County Court for a partition of the slaves bequeathed to them, stated as follows: "The debts of the said testator have not been discharged, there being a large amount outstanding; but there is enough owing the executors to pay the same, if it can be collected; but owing to the pending revolution, it is quite uncertain whether the amount due the said executors, or any part thereof, can ever be realized.

And the slaves belonging to your petitioner under the said will, have been delivered to them, upon the express condition, that should the remaining assets in the hands of the said executors, prove insufficient to pay the debts of said testator, and the reasonable compensation of said executors for their services, your petitioners are to account to said executors for such deficit, each paying," &c. That the said William Norfleet, the intestate of defendant, and one Whitmel P. Lloyd were the executors of the will of said H. S. Lloyd, the said Whitmel being also a legatee; that the slaves were divided and Barbara was allotted to said David Barlow, the testator of the plaintiffs, as trustee, &c.

For the defendant, John Norfleet was called and stated, that he administered the estate of H. S. Lloyd, as the agent of the executors, and that all the moneys were received and payed out by him. That the amount received was $92,246.70, and the amount disbursed in payment of debts and legacies, was $88,594.97; and that allowing commissions at the rate of 5 per cent. on the receipts and 2½ per cent. on the disbursements in payment of debts, would amount to the further sum of $6,657.83, making the amount of credits $95,252.80, and the deficit $3,006.10; that he was to have one half of said commissions for his services as agent. That H. S. Lloyd left a large landed estate, which has been divided among his devisees, who are the same persons as the legatees of the slaves. The witness further testified, that William Norfleet and Whitmel P. Lloyd, the said executors, are both dead, and that the former, Norfleet, survived the latter; and that the last item on their account as executors, and in the account of the said William Norfleet, as surviving executor of said H. S. Lloyd, was of a date prior to the issuing the summons in this action. That he subsequently to the issuing the summons, at the instance and upon the application of the defendant, as administrator of William Norfleet, audited the final account of the administration of said H. S. Lloyd's estate, and allowed commissions to him as such administrator, at the rate of 5 per cent.

on the receipts and 2½ per cent. on the disbursements in payment of debts, amounting to $6,657.83, as before stated. It appeared that the witness, the said John Norfleet, at the time of auditing said account, was Judge of Probate of the county of Edgecombe; and also a brother of the said William Norfleet.

The plaintiffs objected to the admissibility of this counter claim.

The Court submitted to the jury, the following issues:

1. Did the defendant's intestate purchase Barbara, in September, 1862? To this the jury responded, "He did."

2. If so, what was her value at the time of such purchase? Answer by the jury, "$550, with interest."

3. Was there a deficiency of assets for the payment of the debts of H. S. Lloyd, and the expenses of administering his estate? If so, what was the amount of the deficiency? Answer by the jury: "There was a deficiency to the amount of $3006.10, on the 5th day of March, 1871.

The Court instructed the jury, that they might or might not in their discretion, allow interest, on the value of Barbara from the time of the sale. To this, the plaintiffs insisting that the amount bore interest, excepted. They also excepted to the allowance of the counter claim:

1. Because the allowance of commissions was made by John Norfleet, Judge of Probate, he being interested in the matter to the extent of one-half of the commissions allowed to the executors, and was therefore disqualified.

2. Because said John Norfleet was the brother of the said William, one of the executors.

3. Because all of said commissions do not belong to Wm. Norfleet, the surviving executor, but only one-half; the allowance being made to the executors jointly, and not of a certain amount to each one separately.

4. Because said final account was *ex parte* and said allowance not conclusive.

5. Because the allowance was made since the commencement

of this action, and no cause of action had accrued on the same when this action was brought.

His Honor gave judgment on the special verdict, allowing the counter claim set up by the defendant; from which judgment, the plaintiffs appealed.

*Perry,* for appellants.

No counsel *contra* in this Court.

RODMAN, J.   1.  Was Joseph W. Loyd a competent witness to prove a conversation that took place between the testator of the plaintiff, and the intestate of the defendant?   It is settled by the case *Hallyburton* v. *Dobson,* 65 N. C. Rep. 88, that he is not.   The testator of the plaintiff was a trustee of the slave in question for the witness, for his life, and the plaintiff would be a trustee in like manner of the sum recovered.   The proposed witness was substantially a plaintiff in the action.

2.  Was the judgment of the Probate Judge, passing on the accounts of the executors of Henry S. Loyd and allowing commissions on them, admissible in the evidence to show that the executors were entitled to that amount of commissions, and that the personal estate, except the slave had been exhausted in the payment of debts, &c.?

The Probate Judge was personally interested in the commissions.   He is excluded from jurisdiction in such case by C. C. P., Battle's Rev. chap. 90, sec. 3.   It is true that in the subsection immediately following, it is said that unless he is objected to by reason of his interest, at the first hearing of the matter before him, the disqualification is waived.   But this implies that the judgment is given in some action regularly before him, to which there are parties having an opposite interest in the matter, and capable of taking objection.   It does not appear that there has ever been any action or special proceeding between the legatees and the former executors of Henry S. Loyd, or those who now represent such executors, for the settlement of his estate, in which it would be necessary to fix

the amount of commissions to be allowed to the executors. In the case of such an action pending, if the legatees, (being competent to act,) do not object to the jurisdiction of the Probate Judge, to fix the commissions in which he is interested, the allowance may fairly be considered as made by consent and therefore binding on the parties. It did not require a statute to disqualify a Judge from sitting on his own cause. A revered maxim of the common law forbids it.

The question as to the effect of a judgment made by a Judge who had an interest was considered in the case of *Dennis* v. *The Grand Junction Canal Co.*, 16 E. L. & E. Rep. 62, and it was held that such a judgment was not void, but voidable, and that it must be avoided either by the Court that rendered it, or upon appeal or other suitable proceeding in a Superior Court. But that must be understood to apply to proceedings *inter partes*. An *ex parte* judgment, as the allowance of commissions in this case was, must be liable to be attacked collaterally.

3. As it does not appear that the Judge of the Superior Court, on the trial, (trial of the present action,) was requested to, or undertook himself to adjudge on the amount of the commissions to be allowed to the executors, no question arises as to his right to do so. We express no opinion on that point.

4. The administration of the estate of Loyd was closed before the commencement of this action. Whatever the executors or their representatives should receive for commissions, was then owing and though not then reduced to a certainty by a judgment, was capable of being so ascertained, and if it was so ascertained by the time of the trial, we conceive there could be no objection to the counter-claim, on the ground that it did not exist at the commencement of the action.

5. The Judge left it to the jury to give the plaintiff interest or not, as they should think proper. We think he should have instructed them, that if they found that defendant owed the principal money demanded, the plaintiff was entitled to interest, from the time it became due. The Rev. Code, chap. 31, sec. 90, which we have not found in Battle's Revisal, says that

all sums of money due by contract except, &c., shall bear interest. Of course there are necessary exceptions to this rule other than those stated in the act itself, as if the contract be that the principal shall not bear interest. But so far as appears there is nothing in the case, to take the debt to the plaintiff, out of the general rule. The hardship of the case from the subsequent loss of the slave is manifestly insufficient for that purpose. There is error in the matter mentioned.

PER CURIAM.    Judgment below reversed.    *Venire de novo.*