LETHA HOMANICH v. MARGARET L. MILLER

No. 7526DC629

(Filed 4 February 1976)

1. Descent and Distribution § 6— spouse as slayer of other spouse — disposition of entirety property — constitutionality of statute
    The statute providing for the disposition of property held as tenants by the entirety when one spouse is the slayer of the other spouse, G.S. 31A-5, is not discriminatory against the wife-slayer and is constitutional.

2. Descent and Distribution § 6— wife-slayer — entirety property — share of wife
    Where a husband and wife held property as tenants by the entirety, and the wife was found guilty of voluntary manslaughter of the husband and was thus a "slayer" of the husband, the wife-slayer

was entitled to a life estate in one-half of the entirety property under G.S. 31A-5, subject to pass upon her death to the estate of the husband.

APPEAL by plaintiff from *Robinson, Judge.* Judgment entered 2 June 1975 in District Court, MECKLENBURG County. Heard in the Court of Appeals 13 November 1975.

On 26 August 1969, defendant owned with her husband, Lester Burke Miller, certain real property in fee simple as tenants by the entirety. Defendant was charged with the murder of her husband and found guilty of voluntary manslaughter by a jury on 27 October 1969. Defendant is the "slayer" of Lester Burke Miller, as defined in Chapter 31A of the General Statutes.

Lester Burke Miller died intestate, leaving plaintiff and a sister, Mrs. Annie King, as his only two heirs-in-law. Mrs. King conveyed her interest in the real property to plaintiff by quitclaim deed, dated 15 December 1970. Plaintiff is now the sole owner of any and all inheritable interest previously owned by Lester Burke Miller in the real property. Plaintiff alleges that she owns the property in fee and that defendant has no right to the possession, occupation, custody, rents or any other beneficial interest in the property. Plaintiff further asserts that one-half of the property shall be held by the defendant during her life in constructive trust for the estate of Lester Burke Miller, subject to pass to Miller's estate on the death of defendant.

Defendant admitted that she and her husband had owned the property at issue as tenants by the entirety, and she admitted that she was the slayer of her husband as defined in G.S. 31A-3(3). She alleged that despite her status as his slayer, she was entitled to an interest in the property, and in an amended answer she alleged that G.S. 31A-5 is unconstitutional.

Both parties moved for summary judgment. The court granted summary judgment for defendant as to the plaintiff's claim, holding G.S. 31A-5 to be in violation of the Fourteenth Amendment of the U. S. Constitution. The court held that defendant had "a life estate in a one-half undivided interest in the property described in the Complaint, with a vested remainder in the plaintiff." The court further held that defendant was entitled to recover one-half the reasonable rental value of the

property for the time from Lester Burke Miller's death to the entry of summary judgment, and it ordered that a trial be held to determine the amount of this recovery. From this judgment, plaintiff appeals.

*Frank B. Aycock II and L. Hunter Meacham, Jr., for plaintiff appellant.*

*William H. Ashendorf for defendant appellee.*

CLARK, Judge.

This case presents the problem of rights to property held as tenants by the entirety by the slayer-wife and decedent-husband. The problem has been solved in a variety of ways in other states. See Anno., 42 A.L.R. 3d 1116; 2 Lee, N. C. Family Law, § 119. And it has been solved in North Carolina. See *In re Estate of Perry,* 256 N.C. 65, 123 S.E. 2d 99 (1961), which held that the wife-slayer was a constructive trustee, for their daughter, of the rents and profits of the tenancy by the entirety, *at least* during the full term of the husband's life expectancy, in accordance with the equitable principle that a person will not be permitted to benefit from his own wrong.

But *In re Estate of Perry, supra,* filed a few months after the enactment of G.S. 31A-5, effective 1 October 1961, was not affected by this statute.

G.S. 31A-5 provides as follows:

"Where the slayer and decedent hold property as tenants by the entirety:

(1) If the wife is the slayer, one half of the property shall pass upon the death of the husband to his estate, and the other one half shall be held by the wife during her life, subject to pass upon her death to the estate of the husband; and

(2) If the husband is the slayer, he shall hold all of the property during his life subject to pass upon his death to the estate of the wife."

[1]  The different solutions depending upon whether husband or wife is the slayer is not discretionary against the wife-slayer. Such disposition was deemed necessary in order to prevent the slayer-husband from having his vested property right forfeited

for crime or taken without due process, because North Carolina is one of only three states that has retained the common law incident of tenancy by the entirety that "the husband has the control and use of the property and is entitled to the possession, income, and usufruct thereof during their joint lives. [Citations omitted.] [I]f the deceased wife were now living the appellant could not be deprived of his interest in the estate by an arbitrary judgment of the court." *Bryant v. Bryant,* 193 N.C. 372, 378, 137 S.E. 188, 191 (1927), holding that the property was held by the husband as a constructive trustee for the heirs of his wife, subject to the beneficial interest in the whole of the property for the slayer-husband.

So the disposition of the property in *Bryant* is the same as that provided for in G.S. 31A-5(2), except for the constructive trust fiction, where the husband is the slayer. See *Porth v. Porth,* 3 N.C. App. 485, 165 S.E. 2d 508 (1969).

But the disposition of the property in *In re Estate of Perry, supra,* is different from that provided for in G.S. 31A-5(1), where the wife is the slayer. In *Perry* the court gave no beneficial interest to the slayer-wife, but the statute provides that she shall receive a life estate in one-half of the property.

The policy that a slayer will not be permitted to benefit from his own wrong has controlled the disposition of tenancy by the entirety property in North Carolina. This policy is reiterated in G.S. 31A-15, which with G.S. 31A-5 is a part of the Chapter entitled "Acts Barring Property Rights," providing in part as follows: "This chapter shall not be considered penal in nature, but shall be construed broadly in order to effect the policy of this State that no person shall be allowed to profit by his own wrong. . . . "

In *Perry* the wife contended that she was entitled to a life estate in one-half of the property, but the court disposed of this contention with the following statement: "But in this respect, such rents and profits have the same status as other income and assets owned exclusively by the husband. It would be strange indeed if a wife who murders her husband could assert rights on the ground she thereby relieved him of his obligation to support her." 256 N.C. at 70.

[2]    But G.S. 31A-5 provides that the wife-slayer have a life estate in one-half of the property. And when considered in the

light of the common law incident that the husband owns the rents and profits exclusively during his life, which the wife-slayer terminated by her criminal act, "she profits by her own wrong," contrary to the established policy of this State. Nevertheless, the language of the statute is clear. The intent of the legislature controls the interpretation of a statute. 7 Strong, N. C. Index 2d, Statutes, § 5. And it is the duty of the court to carry out this intent, irrespective of any opinion the court may have as to the wisdom of the statute. *Peele v. Finch,* 284 N.C. 375, 200 S.E. 2d 635 (1973). We must assume that the legislature knowingly subjected established policy to provide for a fair disposition of entirety property where the wife slays the husband.

We do not agree with the ruling of the trial court that G.S. 31A-5 is unconstitutional. Since tenancy by the entirety is a purely voluntary method of acquiring and retaining realty, we find no discriminatory state action in violation of the Fourteenth Amendment. *Shelley v. Kraemer,* 334 U.S. 1, 92 L.Ed. 1161 (1947).

The judgment of the trial court, except for the ruling that G.S. 31A-5 is unconstitutional, is

Affirmed.

Chief Judge BROCK and Judge HEDRICK concur.